UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| HASAN BRUCE, | : | Civ. Action No. 19-13028(RMB) |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN POWELL | : | |
| and ATTORNEY GENERAL | : | |
| OF THE STATE OF NEW JERSEY, | : | |
| | : | |
| Respondents | : | |
| | : | |

BUMB, United States District Judge

This matter comes before the Court upon Petitioner Hasan Bruce's ("Bruce") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his state court conviction for aggravated manslaughter and unlawful possession of a weapon. (Pet., Dkt. No. 1.) Respondents filed an answer opposing habeas relief (Answer, Dkt. No. 3), and Bruce filed a reply brief . (Reply Brief, Dkt. No. 4.) For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

I.    PROCEDURAL HISTORY

On February 8, 2017, Bruce was indicted under Atlantic County Indictment No. 13-04-01116-I, for murder, conspiracy to commit murder, possession of a firearm for an unlawful purpose, and unlawful possession of a firearm,. (Answer, Ex. 2, Dkt. No. 3-4.) After a bench trial in the Superior Court of New Jersey, Law Division, Atlantic County, Bruce was found guilty of aggravated manslaughter as a lesser-included offense of murder and unlawful possession of a weapon. (Answer, Ex. 3, Dkt. No. 3-5.) On May 29, 2015,

Bruce was sentenced to an eighteen-year term of imprisonment for aggravated manslaughter, subject to an 85% period of parole ineligibility under the No Early Release Act, N.J. Stat. Ann. 2C:43-7.2, with a consecutive six-year prison term for unlawful possession of a weapon, subject to a three-year period of parole ineligibility. (Answer, Ex. 17 at 6T25-21 to 31-1, Dkt. No. 3-19.) Bruce was acquitted of the other counts in the Indictment (Id., Ex. 3, Dkt. No. 3-5.) He filed a direct appeal in the Superior Court of New Jersey, Appellate Division on February 28, 2017. (Id., Ex. 4, Dkt. No. 3-6.) On January 25, 2018, the Appellate Division issued an unpublished opinion, affirming Bruce's convictions and sentence. (Id., Ex. 6, Dkt. No. 8.) On January 29, 2018, Bruce filed a petition for certification with the Supreme Court of New Jersey, which was denied in an order filed on June 22, 2018. State v. Bruce, 187 A.3d 857 (N.J. 2018) (Answer, Ex. 10, Dkt. No. 12.) Bruce has not filed any other petitions, applications, or motions concerning his judgment of conviction in any state court. (Answer, Dkt. No. 3 at 5.)

II.   DISCUSSION

    A.   <u>Standard of Review</u>

A state prisoner may challenge his conviction or sentence under 28 U.S.C. § 2254(a) only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Prior to bringing a federal habeas petition under 28 U.S.C. § 2254(b)(1)(A), a state prisoner must exhaust his state remedies. Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2). If a state prisoner's constitutional

claim has been barred in the state courts on procedural grounds, a procedural default occurs and a habeas court cannot review the claim absent a showing of cause and prejudice or actual innocence. Coleman v. Thompson, 501 U.S. 722, 729, 750 (1991).

If a constitutional claim has been exhausted,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A petitioner who claims that the state court's adjudication of his claim was based on an unreasonable factual determination under § 2254(d)(2) faces a similarly heavy burden of proof because "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); see also Miller-El v. Cockerell, 537 U.S. 322, 340 (2003). "The petitioner must show that the state court verdict was based on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached the same conclusion." Rosen, 972 F.3d at 252 (3d Cir. 2020) (citing Campbell v. Vaughn, 209 F.3d 280, 291 (3d Cir. 2000)).

"Although state prisoners may sometimes submit new evidence in federal court," the habeas statute "is designed to strongly discourage them from doing so." Cullen v. Pinholster, 563 U.S. 170, 186 (2011). "Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal

courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" Id. (quoting Williams v. Taylor ("Michael Williams"), 529 U.S. at 437 (additional citations omitted)). Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Pinholster, 563 U.S. 170, 180-81 (2011).

The habeas statute also permits an evidentiary hearing under the following circumstances,

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
>> (A) the claim relies on—
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The Supreme Court explained,

> Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief. For example, not all federal habeas claims by state prisoners fall within the scope of § 2254(d), which applies only to claims "adjudicated on the merits in State court proceedings." At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the

> merits in state court. *See, e.g., Michael Williams*, 529 U.S., at 427–429, 120 S.Ct. 1479.

<u>Pinholster</u>, 563 U.S. at 185–86.

B.   <u>Ground One</u>

1.   *The petition*

In his first ground for relief, Bruce contends that

> [t]he trial judge's stated reason for rejecting the claim of self defense at his bench trial indicate[s] a fundamental misunderstanding of the law of self-defense, and, thus, the verdict for aggravated manslaughter must be reversed and matter remanded for trial.

(Pet. ¶ 12, Ground One, Dkt. No. 1.) Bruce adopts his New Jersey Supreme Court brief in

support of his habeas petition. (<u>Id.</u>, Dkt. No. 1 at 17-22.) Bruce claims the trial judge's

misunderstanding of the law of self-defense violated his Fourteenth Amendment right to due

process and a fair trial under the United States and New Jersey Constitutions. (<u>Id.</u> at 17.)

Neither the Appellate Division nor the New Jersey Supreme Court addressed the legal error

Bruce raised, and instead determined only whether sufficient credible evidence supported

the verdict. (<u>Id.</u>)  Bruce explains:

> [t]he judge's reason for rejecting the claim of self-defense amounted to what he believed was one overriding legal principle: that I, the defendant, was obligated to avoid the encounter altogether if I thought Zachary Taylor, the decedent, would be armed. (4T 31-23 to 32-21) Indeed, the judge analogized that supposed "duty" to avoid Taylor entirely with the duty to retreat before using deadly force: "Given my admitted suspicion that Zachary Taylor would be armed with a gun prior to the meeting, I, the defendant, would have been obliged to avoid the meeting altogether, an obligation which in my review would be concomitant with an obligation to flee rather than use deadly force in the face of force being used against you". (4T 31-23 to 32-4) He, the judge, continued with that misplaced analogy: "So, in a sense, it makes no sense that if someone is required to flee before using deadly force, if they

> can do so with complete safety, why are they permitted or
> would be permitted to go to a scene where they perceive that
> there is going to be a threat of force, perhaps a firearm, and
> then claim they had the right of self-defense?" (4T 32-4 to 10)
>
> I, the defendant, urges that the judge's conflation of a duty to
> retreat with a duty not to show up at a scene where there might
> be danger expresses a fundamental misunderstanding of the law
> of self-defense in New Jersey, and, therefore, because the
> aggravated manslaughter verdict was based upon that legal
> error, that verdict should have been reversed and the matter
> remanded for trial on the charge of manslaughter.

(Pet., Dkt. No. 1 at 17-18.)

      2.      *The Answer*

In response to Ground One of the petition, Respondents submit that the petition

does not raise any federal constitutional issue and should be denied. Respondents,

nonetheless, liberally construe the complaint as presenting a claim of insufficient evidence.

The relevant inquiry, Respondents maintain, is whether "any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." Jackson v.

Virginia, 443 U.S. 307, 319 (1979). (Answer, Dkt. No. 3 at 8.) The appropriate inquiry

under Jackson is not "whether the trier of fact made the correct guilt or innocence

determination, but rather whether it made a rational decision to convict or acquit."

(Answer, Dkt. No. 3 at 9, quoting Herrera v. Collins, 506 U.S. 390, 402 (1993) (emphasis in

original)).

      3.      *The Reply Brief*

In his reply brief, Bruce contends that he was not the aggressor and did not provoke

the whole sequence of events leading to the shooting. (Reply Brief, Dkt. No. 4.) Bruce

requests that this Court obtain his statement given to police on September 27, 2012. He

alleges that the transcript of the statement will show he reported that he reached for his gun

only after he saw the victim's friend reach in his pocket for his gun first, contrary to the trial court's reason for rejecting his claim of self-defense. Bruce claims his statement will show that he initially had his phone in his hand when he first exited his vehicle. He maintains that his trial testimony was not properly transcribed, and his testimony was consistent with his September 27, 2012 statement. The victim's friend, Jasper Walker, reached for his gun first, which provoked Bruce to reach for his gun, which in turn caused the victim to reach for his gun. Bruce requests that the Court listen to a recording of his trial testimony and compare it to the statement he made on September 27, 2012.

Bruce also submitted evidence concerning his cell phone that he obtained in discovery in his criminal proceeding. He alleges that the text message sent from the victim to Ms. Smiley was deleted, but it would have shown that the victim was the aggressor. Bruce asks the Court to accept these new claims in his reply brief because he was unaware that he could have amended his petition.

      4.    *Analysis*

        a.    <u>*Ground One as alleged in the petition*</u>

The claim presented in Ground One of the habeas petition challenges a state court determination of state law concerning the law of self-defense in New Jersey.[1] It is not the province of this habeas court to review the state court's legal determination under § 2254(a).

---

[1] In New Jersey, it is the State's burden to disprove self-defense beyond a reasonable doubt. <u>State v. Urbina</u>, 115 A.3d 261, 271 (N.J. 2015) (citing <u>State v. Perry</u>, 590 A.2d 624 (N.J. 1991)). The trial judge, in a bench trial, properly placed the burden of proof on the State. (<u>See</u>, Answer, Ex. 16, Dkt. No. 3-18 at 33.) Therefore, Bruce's challenge to the trial court's interpretation of New Jersey self-defense law does not implicate a federal constitutional right. <u>Compare</u>, <u>Gov't of Virgin Islands v. Smith</u>, 949 F.2d 677, 681 (3d Cir. 1991) ("Because the absence of self-defense could be considered an element of the crime of homicide in the Virgin Islands, the proper placement of the burden of proof on that issue implicates Smith's due process rights.")

Estelle, 502 U.S. at 67–68. This claim could be liberally construed as a due process claim that alleges insufficient evidence to support the trial judge's finding that the State proved the absence of self-defense beyond a reasonable doubt. Respondent has identified the appropriate standard of habeas review, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Habeas review is of the highest state court's decision on the issue, but where the highest state court did not give a reason, a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018).

The New Jersey Supreme Court did not provide a reason for denying Bruce's petition for certification. Therefore, this Court will look through to the Appellate Division's determination of the sufficiency of the evidence due process claim. The Appellate Division addressed Bruce's claim under New Jersey state law, as follows:

> Our review of a judge's verdict in a non-jury case is limited. The standard is not whether the verdict was against the weight of the evidence, but rather "whether there is sufficient credible evidence in the record to support the judge's determination." State ex. rel. R.V., 280 N.J. Super. 118, 121 (App. Div. 1995). Moreover, we are obliged to give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court can not enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).
>
> "[T]he factual findings of the trial court are binding on appeal when supported by adequate, substantial, credible, evidence." State ex. rel. W.M., 364 N.J. Super. 155, 165 (App. Div. 2003). "We do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent,

relevant and reasonably credible evidence as to offend the interests of justice[.]" <u>Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974) (quoting <u>Fagliarone v. Twp. of N. Bergen</u>, 78 N.J. Super. 154, 155 (App. Div. 1963)). Here, defendant admitted he shot the victim ["Taylor"], but claimed he did so in self-defense. "[A] person may justifiably use force against another if he [or she] 'reasonably believes that such force is immediately necessary for the purpose of protecting himself [or herself] against death or serious bodily harm." N.J.S.A. 2C:3-4(b)(2). Moreover, the use of deadly force is not justifiable if "[t]he actor knows that he [or she] can avoid the necessity of using such force with complete safety by treating. . . ." N.J.S.A. 2C:3-4(b)(2)(b).

Applying these principles to the facts developed at trial, the judge properly concluded that the State disproved defendant's claim of self-defense beyond a reasonable doubt. Defendant and the victim were both having a relationship with the same woman. On the day the victim died, defendant's brother went to the victim's home and asked to speak to him. The victim accompanied defendant's brother to a corner where defendant was waiting. A witness testified that the three men were speaking normally, and were not arguing. When the victim returned to the house, he told the witness that, "it was dead," meaning there was no longer a problem.

However, defendant called the victim later that night, and argued with him. After the call ended, the victim told his friends that he was about to fight, tucked a gun in his clothing, and left the house. Two of the victim's friends followed from a distance. By this time, defendant and his brother had driven to the middle of the block. Defendant got out of the car. The victim approached Defendant with his arms up and his hands open and empty, and said "what's up?" Defendant put his hand on the gun he was carrying and he and the victim began walking toward each other. The victim asked Defendant what he was reaching for and, when the two men were face to face, the victim moved to "push [the defendant] and trie[d] to reach and [defendant] had [his] hand on [his] gun already." Defendant admitted he "never did see a gun in the victim's hand."

Defendant then shot the victim twice. According to the autopsy, the first bullet struck the victim in the base of his neck. The Defendant shot the victim a second time in his back as he

was running away. The medical examiner testified that either of the two shots would have proven fatal.

Defendant testified he felt threatened because he believed the victim was "a gangster," who sent their mutual girlfriend a threatening text message about defendant a couple of days before the shooting, and had posted a similar message on a social media account. For this reason, defendant stated he was "not just about to sit around and let [the victim] do something [to him]."

Based upon these facts, the judge concluded that Defendant did not have an objectively reasonable belief that deadly force was necessary to defend himself. In so ruling, the judge found "[t]here can be no question that the perceived threat of the victim reaching for a gun was provoked . . . by defendant's own provocative conduct" and that "the entire sequence of events … was caused by …  defendant's conduct." The judge noted that defendant never saw a gun in the victim's hand and, therefore, had no objective[ly] reasonable basis … to believe he was about to be shot by the victim."

After reviewing the record, we conclude that the judge's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable." We therefore affirm substantially for the reasons that the judge expressed in his well-reasoned oral opinion at the conclusion of the trial.

(Answer, Ex. 6, Dkt. No. 8.)

In Ground One of the petition, putting the reply brief aside for the moment, Bruce does not provide any evidence that the trial judge's factual findings were in error. Although the Appellate Division applied the state law standard for review of the sufficiency of the trial judge's findings of fact, this Court reviews the sufficiency of evidence de novo pursuant to the legal standard announced in Jackson, whether any rational trier of fact could have found that the State disproved self-defense. Based on this Court's review of the trial transcript (Answer, Exhibits 12-16, Dkt. Nos. 14-18), a rational trier of fact could have credited testimony that Defendant and Taylor, the victim, had dated the same woman. Taylor, using

text messages and social media, made threats against Defendant. Defendant decided to confront Taylor directly, first by meeting him outside the home he was in, with Defendant's brother present. They discussed the matter without argument. Later that same day, however, Defendant contacted Taylor by phone to arrange to meet him outside the home again, and Defendant brought a gun to this meeting because he assumed Taylor would have a gun. Taylor was enraged by Defendant's phone call and tucked a gun inside his clothes before going outside to meet Defendant. Taylor held his empty hands up in the air, and Defendant put his hand on his gun. Two of Taylor's friends were standing a few feet away from where Defendant and Taylor met face to face, and one of the men had a gun in his "hoody" pocket. Because Plaintiff had his hand on his gun, Taylor pushed Defendant and started to reach for his own gun, but he was too late, Defendant shot him twice, causing his death. This evidence supports the trial judge's conclusion that Defendant did not have an objectively reasonable belief that deadly force was necessary to defend himself; that Defendant put into action the sequence of events that led to a showdown where both were armed with guns; and that Defendant drew his gun first and shot Taylor. Therefore, the State disproved self-defense beyond a reasonable doubt, and the Court denies Ground One of the petition, liberally construed as a due process challenge to the sufficiency of the evidence to support the verdict.

b.    *Ground One as modified in the reply brief*

In his reply brief, Bruce seeks to submit new evidence in support of his claim that the state court's factual findings were incorrect. He raises three new claims in his reply brief.

i.   *Trial transcript was improperly transcribed*

First, Bruce argues that his September 27, 2012 statement to police was consistent with his trial testimony, and his trial testimony was improperly transcribed. This caused the trial court to erroneously determine that Bruce drew his gun based on the unreasonable belief that Taylor was reaching for a gun. Instead, Bruce claims that he testified that Taylor's friend, Jasper Walker, put his hand on his gun first, which caused Bruce to put his hand on his gun, and Taylor to follow suit. This claim is unexhausted and was raised for the first time in a reply brief.

"It is, of course, inappropriate to raise an argument for the first time in a reply brief." Oberwager v. McKechnie Ltd., 351 F. App'x 708, 711 (3d Cir. 2009). Moreover, if Bruce was permitted to amend his petition to add this unexhausted claim, he would present a mixed petition, one containing exhausted and unexhausted claims. "[A] district court must dismiss habeas petitions containing both unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 522 (1982). A habeas court, may, however, grant a stay and abeyance of a habeas petition while the petitioner returns to state court to exhaust his unexhausted claims. Rhines v. Weber, 544 U.S. 269, 277 (2005). "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. If good cause is shown, a stay should be granted only if the unexhausted claim is potentially meritorious.

Bruce has not offered any reason why he failed to exhaust this claim in the state courts before bringing his federal habeas petition. Just prior to opening statements, the State informed the trial judge that both defendants gave two formal taped statements to the police,

one on the night of the shooting and one on the night of their arrest, September 27, 2012. (Answer, Ex. 12 at 11-12, Dkt. No. 3-14.) The State provided transcripts of the statements to defense counsel but had not yet decided whether to introduce the statements at trial. (Id.) Mr. Gamburg, Bruce's counsel, indicated that he did not intend to file a Miranda motion, even if the State decided to submit the statements as evidence. (Id.)  In his opening statement, Mr. Gamburg argued, based on the physical evidence, that Taylor had his gun out and ready and posed a threat to Bruce, but Bruce got a shot off first. (Id. at 25-26.)

On cross-examination, Bruce was asked about his September 27, 2012 statement to police. (Answer, Ex. 15 at 104, Dkt. No. 3-17.) The prosecutor asked Bruce whether he remembered telling police that he did not see a gun in Zooty's [the victim's nickname] hand, and Bruce agreed "Yes, I never did see a gun in his hand." (Id. at 105.) Bruce testified that both the victim and his friend were wearing hoodies with  their hands in their pockets, which made him suspicious that they had guns in their hands, so Bruce also had his gun in his hand. (Id.) Taylor then pushed him and tried to pull his gun out of his pocket. (Id.) Walker testified that he did not have his gun out. (Answer, Ex. 14 at 44, Dkt. No. 3-16.) Mr. Gamburg, in closing argument on behalf of Bruce, did not argue that Walker drew his gun first, causing Bruce to pull his gun and Taylor to draw his gun as well, as Bruce now claims. (Answer, Ex. 16 at 3-14, Dkt. No. 3-18.) Mr. Hamburg argued, based on the physical evidence, that Taylor shot first but his gun jammed and then Bruce shot him in self-defense. (Id.)

Upon review of the trial transcript and the Appellate briefs in this matter, this Court can find no good cause why Bruce did not raise his claim of error in transcribing his trial testimony in post-trial motions on direct appeal, or as an ineffective assistance of counsel

claim on PCR, assuming his trial and appellate counsel refused to bring the claim.

Therefore, construing the reply brief as a request to amend the petition and for a stay and

abeyance to exhaust the claim in the state courts, pursuant to Rhines, the Court denies the

request because Bruce had every opportunity to raise this claim earlier. If Bruce has shown

good cause which this Court has either overlooked or which constitutes new evidence, he

may seek reconsideration from this Court's ruling.

> ii.   T*he State failed to disclose the victim's text messages*

Bruce raised a second new claim for the first time in his reply brief. He alleges the

following,

> enclosed . . . is a report of the decedent's cell phone
> examination properties straight out of my, the petitioner's,
> discovery which clearly shows that the actual text message that
> the decedent sent the female this whole case was "allegedly"
> over, was deleted or just not selected to be put in my, the
> petitioner's, discovery, which would have furthered my, the
> petitioner's, claim of self-defense. The text message shows that
> the decedent was the actual aggressor.

(Reply Brief, Dkt. No. 4 at 2.)

Bruce appears to be raising a Brady claim—that the State deleted exculpatory text

messages from the victim's phone or otherwise failed to produce the selected messages. In

discovery, Bruce received a cell phone examination report, which he attached to his reply

brief. The report shows that the contents of Taylor's cell phone, including the text messages,

were examined. (Reply Brief, Dkt. No. 4 at 3.) At trial, however, Lieutenant Furman, an

investigator in the Major Crimes Unit at the Atlantic County Prosecutor's Office, testified

that Taylor's father turned the cell phone over to police about thirty days after Taylor was

shot, but Taylor's sister had the phone in her possession for some time prior to that.

(Answer, Ex. 12, Dkt. No. 3-14 at 44, 66.) When the prosecutor's office had the extraction

performed on the cell phone, they learned that the text messages had been deleted. (Id.) The report produced to Plaintiff is consistent with this testimony.

Bruce has not shown good cause for failing to raise this claim sooner; he knew when he received the phone examination report in discovery that the text message, sent by Taylor to Ms. Smiley, had not been produced to him. Moreover, he heard testimony at trial that when the prosecution examined the phone, the text messages had already been deleted. A district court abuses its discretion if it grants a stay while a habeas petitioner returns to state court to exhaust a plainly meritless claim. Rhines, 544 U.S. at 277. Therefore, Bruce is not entitled to amend his complaint and hold the petition in abeyance while he returns to state court to exhaust this claim.

iii.    *Smiley's statement was not produced in discovery*

Bruce raised yet a third new claim for the first time in his reply brief. Bruce alleges that he received discovery from the prosecution that mentioned a statement to police by "the female this case was allegedly over," presumably his ex-girlfriend, Ms. Smiley, [2] but the statement was not produced to him. (Reply Brief, Dkt. No. 4 at 2.) Petitioner was obviously aware of the basis for this Brady claim when he received discovery mentioning a statement by Smiley, and he has not established good cause for failure to exhaust this claim in the state courts prior to bringing his federal habeas petition and then raising the claim in his reply brief. Therefore, the Court declines to hold the habeas petition in abeyance while Bruce returns to state court to exhaust the claim.

---

[2] In the trial transcript, Bruce's ex-girlfriend's first name is spelled phonetically as "Shamirah." (Answer, Ex. 15, Dkt. No. 3-17 at 90.) The Court further notes that a witness named "Shamirah Ricketts" testified at trial. Her statement to police was introduced into evidence as exhibit S-53. (Id., Dkt. No. 3-17 at 51.)

C.      Ground Two

For his second ground for relief, Bruce maintains that state law requires him to be

sentenced to concurrent terms of imprisonment. (Pet. ¶ 12, Ground Two, Dkt. No. 1.) Bruce

argues,

> [a]dditionally, for the reasons in Point II of my brief,
> consecutive sentences were imposed in complete derogation of
> the rules regarding such sentencing. These two offenses of
> weapons possession and the homicide with that same weapon
> were so intrinsically related that concurrent sentencing was
> mandated by the case law. The conflict that the decision below
> has with established case law warrants a grant of Petition on
> that issue as well.

(Pet., Dkt. No. 1 at 21.)

In Response to Ground Two of the petition, Respondents submit that Bruce raised

this claim on direct appeal and in his petition for certification to the New Jersey Supreme

Court, and it was rejected by both courts. (Answer, Ex. 4 at 26-28, Dkt. No. 6; Exhibit 6, at

7, Dkt. No. 8; Exhibit 8 at 7-8, Dkt. No. ; Exhibit 10, Dkt. No. 12.) Further, on direct

appeal and in his habeas petition, Bruce cited only state law in support of his claim of

sentencing error. He failed to cite to any federal law and failed to establish that this claim

constitutes a federal constitutional issue or that the state courts contrarily or unreasonably

applied established federal law. In his reply brief, Bruce asks this Court to vacate his

aggravated manslaughter charge and reduce his sentence on the weapons offense to time

served.

Bruce has not raised a cognizable habeas claim in Ground Two of the petition

because he does not allege that his sentence violates federal law or the United States

Constitution, nor did he exhaust such a claim in the state courts. (Answer, Ex. 4, Dkt. No.

6; Ex. 8, Dkt. No. 10.) The Fourteenth Amendment does not confer "a due process right to

the correct determination of issues of state law." <u>Jones v. Superintendent of Rahway State Prison</u>, 725 F.2d 40, 43 (3d Cir. 1984). Therefore, Ground Two of the petition is denied.

III.    CERTFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). For the reasons discussed above, Bruce has not made a substantial showing of the denial of a constitutional right or violation of federal law, nor does he present a claim that is adequate to deserve encouragement to proceed further. Therefore, the Court will not issue a certificate of appealability.

IV.    CONCLUSION

Bruce has not established his burden on habeas review to show the state courts' denial of his claims was contrary to or involved an unreasonable application of clearly established federal law, nor did he overcome the presumption of correctness of a state court factual finding and establish that a state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, the Court denies the habeas petition.


An appropriate Order follows.

**Date:  November 29, 2021**

                                  s/Renée Marie Bumb
                                  **RENÉE MARIE BUMB**
                                  **United States District Judge**